# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL CASUALTY COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 16-cv-07479 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| SOUTH SHORE IRON WORKS, INC., ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff National Casualty Company ("National Casualty") brings this declaratory judgment action against Defendant South Shore Iron Works, Inc. ("South Shore"), seeking a determination that National Casualty has no duty to defend or indemnify South Shore in a personal injury lawsuit in the Circuit Court of Cook County, Delgado v. South Shore, et al., Case No. 2013 L 013458 (the "Underlying Lawsuit"). National Casualty initially named Julio Delgado ("Delgado") and GD Carriers, Inc. ("GD Carriers") as defendants in the instant action; however, by way of the parties' stipulated agreement, both Delgado and GD Carriers were dismissed from this action, leaving South Shore as the sole defendant. South Shore has filed a three count Counterclaim: Count I seeks a determination that National Casualty has a duty to defend and indemnify South Shore in the Underlying Lawsuit; Count II sets forth a claim for breach of contract; and Count III sets forth a "bad faith" claim under 215 ILCS § 5/155. Before the Court are the parties' cross-motions for summary judgment. For the following reasons, the Court determines that National Casualty breached its duty to defend South Shore in the Underlying Lawsuit and has a duty to indemnify South Shore for the settlement of the Underlying Lawsuit; however, South Shore's "bad faith" counterclaim under 215 ILCS § 5/155 is dismissed with

prejudice. Accordingly, National Casualty's motion is granted in part and denied in part; and South Shore's motion is granted in part and denied in part.

## I. BACKGROUND

South Shore is a structural steel company located in Chicago, Illinois. GD Carriers is a trucking company located in Chicago, Illinois. At all times relevant, Delgado was an employee of GD Carriers.

In 2013, South Shore was providing steel components for a job site in Rochelle, Illinois (the "Rochelle Project"). South Shore manufactured the steel components and then loaded the components onto flatbed trailers at its facility in Chicago. South Shore did not transport the loaded trailers to the Rochelle Project. Rather, South Shire hired various trucking companies—including GD Carriers—to transport the loaded trailers.

On November 4, 2013, Delgado drove a tractor owned by GD Carriers to South Shore's facility to pick up a trailer loaded with steel beams for delivery to the Rochelle Project. After Delgado arrived at South Shore's premises, he connected GD Carrier's tractor to the trailer that he was assigned to transport. At the time Delgado connected GD Carrier's tractor to the trailer, it was still being loaded with steel beams by South Shore employees. Once the trailer was fully loaded, Delgado began securing the load of steel beams for transport to the Rochelle Project. GD Carrier's tractor remained parked and connected to the trailer while Delgado was attempting to secure the load—the tractor/trailer never moved. While Delgado was attempting to secure the load on the trailer, he fell to the ground and was injured.

On November 25, 2013, Delgado filed the Underlying Lawsuit against South Shore and other parties in the Circuit Court of Cook County. Delgado's fourth amended complaint in the Underlying Lawsuit, filed on April 15, 2016, alleged that his injury was the result of South Shore's

negligent acts or omissions, including: South Shore "[i]mproperly loaded the flatbed trailer requiring [Delgado] to climb on top of the load in order to secure it; South Shore "[p]ainted the steel beams which [Delgado] was to haul, causing them to become dangerously slippery"; and South Shore "failed to warn [Delgado] of the dangerously slippery condition of the recently painted steel beams." Pl.'s SOMF ¶¶ 27-28, Ex. C (the "Underlying Complaint") ¶¶ 5-9. Delgado also alleged that on the date of his injury he was "working as a truck driver employed by GD Carriers…assigned to pick up a trailer of steel beams at…South Shore['s] plant," and that he "was a business invitee on the premises of [South Shore] for the benefit of [South Shore]." Id. ¶¶ 2-3.

Prior to Delgado's injury, National Casualty issued a commercial auto policy to GD Carrier's, Policy Number OP00042008, effective from July 15, 2013 to July 15, 2014, with a liability coverage limit of $1,000,000 (the "Policy"). The Policy provides as follows, in relevant part:

1. WHO IS AN INSURED

The following are "insureds":

a. You for any covered "auto".
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
  (4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while moving property to or from a covered "auto".

d. The owner or anyone else from whom you hire or borrow a covered "auto" that is a "trailer" while the "trailer" is connected to another covered "auto" that is a power unit, or, if not connected, is being used exclusively in your business.

Compl., Ex. A at 64.

By letter dated June 18, 2015, South Shore tendered the Underlying Lawsuit to National Casualty for a defense and indemnification. By letter dated July 31, 2015, National Casualty denied

3

South Shore's tender of the Underlying Lawsuit on the basis that South Shore did not qualify as an "insured" under the Policy. National Casualty did not defend South Shore in the Underlying Lawsuit based on a reservation of rights or otherwise. National Casualty filed the instant declaratory judgment action on July 22, 2016.

On January 9, 2018, after the parties filed their initial briefs for the present motions, South Shore settled the Underlying Lawsuit with Delgado for $2.5 million. Pl.'s Resp. to Def.'s SOMF, Ex. H. That same day, the Circuit Court of Cook County dismissed the Underlying Lawsuit with prejudice and retained jurisdiction only to effectuate the settlement. Id., Ex. I.

## II. DISCUSSION

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The Court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id.

Where parties file cross-motions for summary judgment, the standard of decision does not change. Selective Ins. Co. of S.C. v. Target Corp., 845 F.3d 263, 265 (7th Cir. 2016), as amended (Jan. 25, 2017). The Court "take[s] the motions one at a time," Black Earth Meat Mkt., LLC v. Vill. of Black Earth, 834 F.3d 841, 847 (7th Cir. 2016), and "construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration is made." Target Corp., 845 F.3d at 265 (internal quotation marks and citation omitted).

**B. National Casualty Has Breached Its Duty to Defend South Shore and Has a Duty to Indemnify South Shore For the Settlement of the Underlying Lawsuit**

The dispositive issue in this case is whether South Shore qualifies as an insured under the language of the Policy. As explained *infra*, if South Shore qualifies as an insured, National Casualty has breached its duty to defend South Shore and owes a duty to indemnify South Shore, up to the Policy limit of $1,000,000, for the settlement of the Underlying Lawsuit. There is also a secondary issue raised by the parties regarding whether the Court may examine evidence beyond the Underlying Complaint in determining National Casualty's duty to defend South Shore.

National Casualty argues that South Shore does not qualify as an insured under the Policy because: (1) South was not "using" GD Carrier's tractor, as required by the Policy; (2) even if South Shore was "using" GD Carrier's tractor, coverage is precluded by an exception in the Policy that removes insured status for certain persons, including South Shore, while "moving property" to or from a covered auto; and (3) GD Carriers did not "hire" or "borrow" the trailer from South Shore, as required by the Policy. Additionally, accordingly to National Casualty, the Court may properly consider evidence outside of the Underlying Complaint in determining its duty to defend and indemnify.

Conversely, South Shore argues that it *does* qualify as an insured under the Policy because: (1) South Shore was "using" GD Carrier's tractor when Delgado was injured; (2) the Policy's

5

"moving property" exception does not apply; and (3) GD Carriers was "borrowing" the trailer in question from South Shore. Further, according to South Shore, the Court is constrained to examining the Underlying Complaint alone in determining whether National Casualty breached its duty to defend. Finally, South Shore argues that National Casualty is estopped from raising coverage defenses due to its delay in filing this action; or, even if National Casualty is not estopped from raising coverage defenses, it still has a duty to indemnify South Shore based on the undisputed facts.

**1. Illinois Law Applies**

As an initial matter, there is a choice of law issue to resolve. In diversity cases, federal courts apply federal procedural law and state substantive law. Allen v. Cedar Real Estate Grp., LLP, 236 F.3d 374, 380 (7th Cir.2001) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)). "Questions of insurance-policy interpretation are substantive." Natl. Am. Ins. Co. v. Artisan and Truckers Cas. Co., 796 F.3d 717, 723 (7th Cir. 2015). Here, the parties agree that Illinois law applies in this case, and there is no reason for the Court to conclude otherwise.

**2. Duty to Defend**

"An insurer's duty to defend its insured is much broader than its duty to indemnify its insured." Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co., 215 Ill. 2d 146, 155 (Ill. 2005). "In a declaratory judgment action…where the issue is whether the insurer has a duty to defend, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy." Pekin Ins. Co. v. Wilson, 237 Ill. 2d 446, 455 (Ill. 2010). "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." Midwest Sporting Goods Co., 215 Ill. 2d at 155. "Under Illinois law, courts

liberally construe both the terms of an insurance policy and the allegations in the underlying complaint in favor of the insured." Natl. Am. Ins. Co. v. Artisan and Truckers Cas. Co., 796 F.3d 717, 723 (7th Cir. 2015).

"[U]nder certain circumstances, [a court may] look beyond the underlying complaint in order to determine an insurer's duty to defend." Wilson, 237 Ill. 2d at 459. When an insurer files a declaratory proceeding challenging its duty to defend, the court may consider evidence beyond the underlying complaint so long as the court does not determine an issue critical to the underlying action. Id. at 1020 (citing Fid. & Cas. Co. of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301, 304–05 (1st Dist. 1983)). "To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory action's purpose of settling and fixing the rights of the parties." Id. (quoting Envirodyne Engineers, Inc., 122 Ill. App. 3d at 304–05).

"The construction of an insurance policy's provisions is a question of law." Outboard Marine Corp. v. Liberty Mut. Ins. Co., 154 Ill. 2d 90 (Ill. 1992). "When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed by the words of the policy." Rich v. Principal Life Ins. Co., 226 Ill. 2d 359, 371 (Ill. 2007). "Because the court must assume that every provision was intended to serve a purpose, an insurance policy is to be construed as a whole, giving effect to every provision." Id. "If the words used in the policy are clear and unambiguous, they must be given their plain, ordinary, and popular meaning." Cent. Illinois Light Co. v. Home Ins. Co., 213 Ill. 2d 141, 153 (Ill. 2004). "However, if the words used in the policy are reasonably susceptible to more than one meaning, they are ambiguous and will be strictly construed against the drafter." Id.

### a. The Court may consider evidence beyond the Underlying Complaint

The Court must first resolve whether it may consider evidence beyond the Underlying Complaint in determining whether National Casualty had a duty to defend South Shore. As discussed above, under Illinois law, the Court may consider evidence beyond the underlying complaint so long as the Court does not determine an issue critical to the Underlying Action. Wilson, 237 Ill. 2d at 459. Here, the Underlying Lawsuit has been settled. Therefore, there is no danger of the Court improperly resolving any issues critical to Underlying Lawsuit. Moreover, as discussed *infra*, the undisputed material facts at issue in the instant matter concern whether South Shore was "using" GD Carrier's tractor and whether the loading of the steel beams was complete when Delgado fell—these were not critical issues in the Underlying Lawsuit. Accordingly, contrary to South Shore's argument, the Court may consider evidence beyond the Underlying Complaint in determining whether National Casualty breached its duty to defend. However, the evidence outside of the Underlying Complaint does not benefit National Casualty, because the undisputed facts show that National Casualty breached its duty to defend South Shore.

### b. South Shore was "using" GD Carrier's tractor

National Casualty argues that it had no duty to defend because South Shore does not qualify as an insured under the Policy. The Policy provides, in relevant part, the following definition for who qualifies as an "insured": "Anyone…while *using* with your permission a covered 'auto' you own, hire or borrow." Compl., Ex. A at 64 (emphasis added).

There is no dispute that the tractor driven by Delgado to South Shore's facility was a covered auto owned by GD Carriers. However, the parties disagree as to whether South Shore was "using" GD Carrier's tractor at the time of Delgado's injury. The Policy does not define the term "using."

Both parties point to Schultz v. Illinois Farmers Ins. Co., 237 Ill. 2d 391, 401 (Ill. 2010) as providing the relevant definition for "using." In Schultz, the Illinois supreme court held that the plain and ordinary meaning of the word "use" is to "EMPLOY, UTILIZE, APPLY, [and] AVAIL. [.It] is general and indicates any putting to service of a thing." Id. (emphasis in original). The court explained that "[c]onsistent with this definition, the use of an automobile has been held to denote its employment for some purpose of the user." Id. Moreover, the court held that "'use' is not limited to operating or driving a motor vehicle. It also includes riding in one as a passenger." Id. at 402.

Here, National Casualty argues that because GD Carrier's tractor remained parked while it was being loaded, it was never "put to service," and therefore South Shore was not "using" the tractor at time of Delgado's injury. South Shore, on the other hand, argues that it was "using" the tractor to transport steel beams to the Rochelle Project, which necessarily included the tractor being connected to the trailer and securing the load for transport. The Court agrees with South Shore.

There is no dispute that South Shore hired GD Carriers to provide the tractor to transport a load of steel to the Rochelle Project. There is also no dispute that prior to Delgado's injury, he connected the tractor to the trailer while it was being loaded at South Shore's facility and that he was securing the load of steel beams in preparation for transport when he fell and was injured.

In order for GD Carrier's tractor to transport the steel beams for South Shore, Delgado had to connect the tractor to the trailer; secure the load of the steel beams; and finally, drive the load to the Rochelle Project. Thus, because the tractor was connected to the trailer, it was being "employ[ed] for some purpose of the user"—transporting the load of steel beams for South Shore. National Casualty essentially argues that because the tractor was not being operated while Delgado was injured, it was not being "used." However, this narrow definition of "use" has been expressly rejected by the Illinois supreme court. Schultz, 237 Ill. 2d at 402 ("'[U]se' is not limited to

operating or driving a motor vehicle."). Accordingly, consistent with the definition of "use" provided in Schultz, the undisputed facts show that South Shore was "using" GD Carrier's tractor at the time of Delgado's injury.

The Court would reach the same conclusion even if it were to consider the Underlying Complaint alone. Delgado alleged in the Underlying Complaint that he was "working as a truck driver employed by GD Carriers…assigned to pick up a trailer of steel beams at…South Shore['s] plant," and that he "was a business invitee on the premises of [South Shore] for the benefit of [South Shore]." Underlying Complaint ¶¶ 2-3. The Underlying Complaint also alleged that Delgado was injured while he was securing the load of steel beams for hauling. Id. ¶ 7. While Delgado did not specifically allege that GD Carrier's tractor was connected to the trailer at the time of his injury, he also did not allege the tractor was *not* connected to the trailer. Therefore, construing the allegations in favor of South Shore, the Underlying Complaint alleged facts indicating that South Shore was *potentially* "using" GD Carrier's tractor at the time of Delgado's injury, which is sufficient to trigger an insurer's duty to defend. Midwest Sporting Goods Co., 215 Ill. 2d at 155.

**c. The "Moving Property" exception does not apply**

Next, National Casualty argues that even if South Shore was "using" GD Carrier's tractor, South Shore's insured status would be removed by the "moving property" exception in the Policy. The "moving property" exception provides that an "insured" is:

> b.  Anyone else while using with your permission a covered "auto" you own, hire or borrow *except*:
>
>   (4)  Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), a lessee or borrower of a covered "auto" or any of their "employees", while *moving property* to or from a covered "auto".

Comp., Ex. A at 64 (emphasis added). National Casualty contends that this exception applies because Delgado's injury was caused by South Shore's negligence in improperly loading, or *moving*, the steel beams onto the trailer. The Court disagrees.

First, the Court rejects that the proper time frame to consider for insurance coverage is limited to the period during which a negligent act or omission occurs. National Casualty relies on a single case from the Fifth Circuit Court of Appeals in support of this argument. Float-Away Door Co. v. Cont'l Cas. Co., 372 F.2d 701 (5th Cir. 1966). Moreover, National Casualty plainly misrepresents the holding of Float-Away. See id. at 707 ("[T]he extent of…coverage should be measured by the clause obligating [the insurer] to pay damages 'sustained by any person, caused by accident and arising out of the ownership, maintenance or use of any automobile.'").

Here, it is undisputed that the trailer was *not* being loaded at the time of Delgado's injury. South Shore had finished loading the trailer and Delgado was securing the load for transport at the time he was injured. Accordingly, the above exception does not remove South Shore's insured status because it only applies "while [the insured is] *moving property*." Compl., Ex. A at 64 (emphasis added). National Casualty points to no other exception in the policy that would remove South Shore's insured status as a permissive "user" of GD Carrier's tractor.

The Court concludes that South Shore was an insured under the Policy because it was "using" GD Carrier's tractor at the time of Delgado's injury and because the "moving property" exception does not apply. Thus, there is no need for the Court to consider the parties' arguments regarding whether GD Carriers was "borrowing" the trailer in question from South Shore, within the meaning of the Policy.

### d. National Casualty Breached Its Duty to Defend South Shore

Having established that South Shore is an insured under the Policy, the next issue is whether the Underlying Lawsuit is covered by the Policy. The Policy provides, in relevant part, that:

> We will pay all sums that an "insured" legally must pay as damages because of "bodily injury" …to which this insurance applies, caused by an "accident" and resulting from the ownership maintenance or use of a covered "auto."…We will have the right and duty to defend any "insured" against a "suit" asking for such damages.

Compl., Ex A at 63.

As explained *supra*, South Shore is an insured under the Policy, because it was "using" GD Carrier's tractor to transport steel beams at the time of Delgado's injury. Moreover, it is undisputed that Delgado was injured while he was attempting to secure the load of steel beams for transport. Thus, Delgado's injury resulted from South Shore's "use" of GD Carrier's tractor and National Casualty owed a duty to defend South Shore in the Underlying Lawsuit, wherein Delgado sued South Shore for the injuries he sustained while attempting to secure the load of steel beams. However, it is undisputed that National Casualty denied South Shore's tender of the Underlying Lawsuit. Therefore, National Casualty breached its duty to defend South Shore.

### 3. National Casualty is Not Estopped from Raising Coverage Defenses

South Shore argues that National Casualty should be estopped from asserting coverage defenses because it waited thirteen months to file this declaratory judgment action after denying South Shore's tender of the Underlying Lawsuit. "It is well established under Illinois law that estoppel applies only when there is a duty to defend *and* that duty has been breached." Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co., 353 F. Supp. 2d 966, 971 (N.D. Ill. 2005) (citing Employers Ins. of Wausau v. Ehlco Liquidating Tr., 186 Ill. 2d 127, 154–54 (Ill. 1999))

(emphasis in original). "The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." Wausau, 186 Ill. 2d at 150. "Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." Id. "If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage." Id. at 150-51. Moreover, "[w]here an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law," and the insurer is estopped from raising coverage defenses. Id. at 157. However, "[a]n insurer will not be estopped from denying coverage merely because the underlying case proceeds to judgment [or settlement] before the declaratory judgment action is resolved." State Farm Fire & Cas. Co. v. Martin, 186 Ill. 2d 367, 374 (Ill. 1999).

Illinois appellate courts have expanded upon the standards employed in determining whether a declaratory judgment action is untimely as a matter of law. L.A. Connection v. Penn-Am. Ins. Co., 363 Ill. App. 3d 259, 265 (3rd Dist. 2006) (collecting cases). Some courts have found that a declaratory judgment action is timely as long as it was filed before the underlying lawsuit ends. See Pekin Ins. Co. v. Allstate Ins. Co., 329 Ill. App. 3d 46, 50 (1st Dist. 2002); Farmers Auto. Ins. Ass'n v. Country Mut. Ins. Co., 309 Ill. App. 3d 694, 700 (4th Dist. 2000). Other courts have focused on whether the insurer waited to file a declaratory judgment action "until trial or settlement was imminent" in the underlying lawsuit. See Aetna Cas. & Sur. Co. v. O'Rourke Bros., 333 Ill. App. 3d 871, 880 (3rd Dist. 2002); Westchester Fire Ins. Co. v. G. Heileman Brewing Co., 321 Ill. App. 3d 622, 634 (1st Dist. 2001). Finally, some courts consider whether an insurer has sought

declaratory relief within a "reasonable time" of learning of the underlying lawsuit. See W. Am. Ins. Co. v. J.R. Const. Co., 334 Ill. App. 3d 75, 87 (1st Dist. 2002); Employers Reinsurance Corp. v. E. Miller Ins. Agency, Inc., 332 Ill. App. 3d 326, 342 (2002). To be clear, the Illinois supreme court has held only that a declaratory judgment action is untimely as a matter of law when it is filed *after* the underlying lawsuit has been resolved by a judgment or a settlement. Wausau, 186 Ill. 2d at 156.

South Shore argues that under the "reasonable time" standard, Illinois courts have generally held as untimely a delay of ten months or more between an insurer learning of the underlying lawsuit and filing a declaratory judgment action. See Cent. Mut. Ins. Co. v. Kammerling, 212 Ill. App. 3d 744, 749 (1st Dist. 1991) (holding that a ten month delay was untimely); Korte Const. Co. v. Am. States Ins., 322 Ill. App. 3d 451, 458 (5th Dist. 2001) (holding that twelve month delay was untimely); Country Mut. Ins. Co. v. Ticketsnow.com, No. 1-06-1135, 2007 WL 7595190, at *11 (1st Dist. 2007) (holding that approximately a year long delay was untimely). However, South Shore also admits that Illinois courts have not adopted a bright line rule in regards to what constitutes a "reasonable time." Nonetheless, South Shore argues that National Casualty should be estopped from raising coverage defenses because it waited thirteen months to file this declaratory judgment action after South Shore tendered the Underlying Lawsuit.

Here, it is undisputed that National Casualty filed this declaratory judgment action prior to the settlement of the Underlying Lawsuit—in fact, this action was filed more than *seventeen months* prior to the settlement. Further, National Casualty sought declaratory relief only four months after the fourth amended complaint was filed in the Underlying Lawsuit. Thus, National Casualty did not delay its filing of this declaratory judgment action until the Underlying Lawsuit was resolved or until trial or settlement was imminent.

As for the "reasonable time" standard, the Court rejects that National Casualty waited an unreasonable amount of time to file this action, given the protracted procedural history of the Underlying Lawsuit—South Shore waited nineteen months to tender the Underlying Lawsuit to National Casualty and the fourth amended complaint was filed only four months prior to the filing of this action. Further, the fact that the Underlying Lawsuit was settled prior to the resolution of this action does not make it untimely. Martin, 186 Ill. 2d at 374. Accordingly, following the Illinois supreme court's holding in Wausau, National Casualty's filing of this declaratory judgment action was not untimely as a matter of law, and therefore it is not estopped from raising coverage defenses. 186 Ill. 2d at 157. However, as explained *infra*, even though National Casualty is not estopped from raising coverage defenses, the Court concludes that National Casualty has a duty to indemnify South Shore for the settlement of the Underlying Lawsuit.

**4. National Casualty Has a Duty to Indemnify South Shore**

"An insurer's duty to indemnify is narrower than its duty to defend its insured." Outboard Marine Corp., 154 Ill. 2d at 127. "[T]he duty to indemnify is determined once liability has been affixed." Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co., 796 F.3d 717, 724 (7th Cir. 2015) (Illinois law). "[T]he duty to indemnify arises if the insured's activity and the resulting loss or damage *actually* fall within the…policy's coverage." Outboard Marine Corp., 154 Ill. 2d 90 at 128 (emphasis in original). "Under Illinois law, construction of insurance policies is a question of law." Keystone Consol. Industries, Inc. v. Employers Ins. Co. of Wausau, 456 F.3d 758, 762 (7th Cir. 2006) (citing Outboard Marine Corp., 154 Ill. 2d at 90). "Policies will be construed as a whole; if the words used in the policies are clear, then they must be given their plain, ordinary, and popular meaning." Id. (internal quotation marks omitted).

Here, the parties both argue that the issue of indemnification is ripe for adjudication. The Court agrees, as there is no dispute that the Underlying Lawsuit was settled for $2.5 million. Thus, the Court must consider whether the Underlying Lawsuit and resulting settlement falls within the Policy's coverage.

National Casualty makes two arguments against indemnification: (1) South Shore is not an insured under the Policy; and (2) the other conditions of indemnification in the Policy have not been satisfied. As previously discussed at length by the Court, South Shore is an insured under the Policy. Therefore, the only remaining issue is whether the conditions of indemnification in the Policy have been satisfied.

The Policy provides in relevant part that: "[National Casualty] will pay all sums that an 'insured' legally must pay as damages because of 'bodily injury'…to which this insurance applies, caused by an 'accident' and resulting from the ownership maintenance or use of a covered 'auto.'" Compl., Ex. A at 64. Here, it is undisputed that South Shore settled the Underlying Lawsuit with Delgado for $2.5 million, wherein Delgado claimed that he was injured in an *accident* caused by South Shore's negligent acts and omissions. Further, the Court has already concluded that Delgado's injury resulted from South Shore's "use" of GD Carrier's tractor because Delgado was injured while he was attempting to secure the load of steel beams for transport. South Shore argues that "there is nothing in the record before [the] Court that would indicate that [South Shore] is not entitled to be indemnified by [National Casualty.]" Def.'s Mem. in Opp.'n to Pl.'s Mot. for Summ. J. at 12. The Court agrees. Based on the undisputed facts before the Court, National Casualty has a duty to indemnify South Shore for the settlement of the Underlying Lawsuit up to the Policy limit of $1,000,000.

16

**C. South Shore is Not Entitled to "Bad Faith" Damages**

Finally, the Court addresses Count III of South Shore's counterclaim, in which it seeks attorneys fees and sanctions under 215 ILCS § 5/155, based on National Casualty's alleged unreasonable and vexatious behavior. More specifically, South Shore claims that National Casualty's actions were unreasonable and vexatious because it had no valid basis to deny South Shore coverage and it failed to file this action in a timely manner. National Casualty argues that South Shore's bad faith claim fails as matter of law because there was a *bona fide* dispute concerning coverage and National Casualty filed this action in a timely manner to resolve that dispute. For the following reasons, the Court agrees with National Casualty.

Section 155 of the Illinois Insurance Code states:

> (1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus an amount not to exceed any one of the following amounts:
> (a) 60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
> (b) $60,000;
> (c) the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

However, "where a *bona fide* dispute concerning coverage exists, costs and sanctions are inappropriate." State Farm Mut. Auto. Ins. Co. v. Smith, 197 Ill. 2d 369, 380 (Ill. 2001). A bona fide dispute is one that is "[r]eal, genuine, and not feigned." Med. Protective Co. v. Kim, 507 F.3d 1076, 1087 (7th Cir. 2007) (quoting McGee v. State Farm Fire & Cas. Co., 315 Ill. App. 3d 673, 683 (2nd Dist. 2000)) (alterations in original).

Here, the Court cannot agree that National Casualty's conduct was vexatious or unreasonable. Notwithstanding that National Casualty has not prevailed on its arguments regarding

17

whether South Shore's qualifies as an insured, its arguments were "presented with reasoned support," and therefore raised a *bona fide* dispute as to coverage. <u>Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.</u>, 200 F.3d 1102, 1110 (7th Cir. 2000). Moreover, contrary to South Shore's assertion, the Court has held that National Casualty's filing of this declaratory judgment action was *not* untimely as a matter of law. Accordingly, South Shore's "bad faith" claim, as set forth in Count III of its Counterclaim, is dismissed with prejudice.

### III. CONCLUSION

For the aforementioned reasons, South Shore is an "insured" under the Policy and National Casualty has breached its duty to defend South Shore in the Underlying Lawsuit. Moreover, National Casualty has a duty to indemnify South Shore up to the Policy limit of $1,000,000 for the settlement in the Underlying Lawsuit. However, in denying South Shore's tender of the Underlying Lawsuit, National Casualty's conduct was not unreasonable or vexatious; therefore, Count III of South Shore's Counterclaim is dismissed with prejudice. Accordingly, National Casualty's Motion for Summary Judgment is granted in part and denied in part and South Shore's Motion for Summary Judgment is granted in part and denied in part.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: September 14, 2018